UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

ARMANDO VILLANUEVA MONERO,

Petitioner,

v.

TODD BLANCHE, acting Attorney General of the United States, et al.,

Respondents.

CASE NO. 2:26-cv-02749-TL

ORDER PETITION FOR WRIT OF HABEAS CORPUS

This matter is before the Court on Petitioner Armando Villanueva Monero's Petition for Writ of Habeas Corpus. Dkt. No. 4. Respondents[1] are Todd Blanche, Attorney General of the United States; Markwayne Mullin, Secretary for the U.S. Department of Homeland Security ("DHS"); Julio Hernandez, Acting Seattle Field Office Director, U.S. Citizenship and Immigration Services ("USCIS"); and Bruce Scott, Warden of the Immigration Detention Facility. *Id.* at 4. Having reviewed the petition, Respondents' return (Dkt. No. 8), Petitioner's

[1] As used elsewhere in this Order, "Respondents" does not include Respondent Scott, who has not appeared in this matter.

reply (Dkt. No. 13), and the relevant record, the Court GRANTS IN PART and DENIES IN PART the petition.

## I. BACKGROUND[2]

Petitioner is a native and citizen of Venezuela. Dkt. No. 9 (Arambula Decl.) ¶ 3. On August 22, 2022, Petitioner entered the United States without inspection. At an unknown time and location on that same day, United States Border Patrol encountered Petitioner and detained him. *See id.* ¶ 4; Dkt. No. 10-1 (Form I-213) at 3. On August 23, 2022, Border Patrol officers paroled Petitioner into the United States as an alternate to detention, and his parole status was valid until October 24, 2022. Dkt. No. 9 ¶ 5. On March 20, 2023, DHS released Petitioner into the community on an Order of Recognizance ("OREC"). *Id.* ¶ 6. On August 22, 2023, Petitioner filed for asylum with USCIS. *Id.* ¶ 7; Dkt. No. 10-1 at 3. Over the course of the next several years, Petitioner was charged with and convicted of two criminal offenses. Dkt. No. 9 ¶ 8. On December 20, 2024, Petitioner was convicted in Oregon of Theft 2nd Degree. Dkt. No. 10-1 at 3. On January 26, 2026, Petitioner was convicted in Oregon of Kidnapping 2nd Degree. *Id.* On April 28, 2026, Petitioner was arrested for an alleged probation violation—a proceeding that is currently pending. *Id.* at 4. Less than a week later, Petitioner was arrested on another alleged probation violation and a charge of Attempted Kidnapping, both of which are pending. *Id.*; Dkt. No. 9 ¶ 8. On September 8, 2025, USCIS issued a Notice of Forwarding Form I-589 to the Executive Office for Immigration Review ("EOIR"). Dkt. No. 9 ¶ 9; Dkt. No. 10-2 (USCIS Notice of Forwarding Form) at 2. A few months later, on December 4, 2025, USCIS issued Petitioner a Notice to Appear ("NTA") charging Petitioner as removable from the United States

---

[2] Some of the facts recounted here are based on hearsay contained within narrative portions of documents from Petitioner's immigration record, or on the declaration of Deportation Officer Gabriel Arambula, who does not claim to have firsthand personal knowledge of most of the facts therein (*see* Dkt. No. 9 (Arambula Decl.) ¶ 2). The Court makes no findings as to whether these are true and correct statements of fact.

under Section 212(a)(6)(A)(i) of the Immigration and National Act ("INA") and scheduling him to appear before an Immigration Judge ("IJ") in removal proceedings. *Id.* ¶ 10; Dkt. No. 10-2 (NTA) at 4. That same day, the USCIS initiated Petitioner's removal proceedings by filing the NTA with the immigration court. Dkt. No. 9 ¶ 10.

Several months later, on May 14, 2026, Enforcement and Removal Operations ("ERO") officers learned that Petitioner was in custody at the Clackamas County, Oregon, jail. *Id.* ¶ 11. Due to Petitioner's immigration status and criminal history, ERO officers issued a Form I-200 administrative warrant for Petitioner's arrest. *Id.* The next day, ERO officers waited outside the jail for Petitioner's release. Upon Petitioner's exit from the jail, ERO officers detained Petitioner, took Petitioner into custody of the Portland ERO office, cancelled Petitioner's OREC, and transferred Petitioner to the Northwest ICE Processing Center ("NWIPC"). *Id.* ¶ 12.

After Petitioner was transferred to the NWIPC, Petitioner was scheduled for a final merits hearing to take place on July 30, 2026. *Id.* ¶ 14. That hearing was later rescheduled to September 15, 2026, due to power outages at Tacoma Immigration Court. *Id.* On August 3, 2026, Petitioner, proceeding pro se, filed the instant habeas petition, seeking both immediate release from custody under 28 U.S.C. § 2241(a) and injunctive relief within the Court's federal-question jurisdiction under 28 U.S.C. § 1331. *See* Dkt. No. 4 at 3. At the time of this Order, the Parties have not updated the Court as to what occurred at the September 15, 2026, merits hearing. However, the matter is fully briefed and ripe for the Court's review.

## II. LEGAL STANDARD

### A. Habeas Corpus Petition Legal Standard

"Writs of habeas corpus may be granted by . . . the district courts . . . within their respective jurisdictions." 28 U.S.C. § 2241(a). Habeas petitioners must prove by a preponderance of the evidence that they are entitled to relief, *Davis v. Woodford*, 384 F.3d 628, 638 (9th Cir.

2004)—that is, that they are "in custody in violation of the Constitution or laws or treaties of the United States," 28 U.S.C. § 2241(c).

### B. Injunctive Relief Legal Standard

A petitioner "seeking a permanent injunction . . . must demonstrate: (1) that he has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction." *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006). Factors three and four of the *eBay* analysis merge when the Government is the party opposing injunctive relief. *Nken v. Holder*, 556 U.S. 418, 435 (2009). The Ninth Circuit has treated the first and second factors of the *eBay* test as satisfied where the party requesting injunctive relief can demonstrate that "it is likely to suffer irreparable injury that cannot be redressed by an award of damages," whether or not such injury has already occurred. *See City & Cnty. of San Francisco v. Trump*, 897 F.3d 1225, 1243 (9th Cir. 2018).

## III. DISCUSSION

### A. Statutory Authority for Petitioner's Detention

As a preliminary matter, the Court will identify the statutory authority under which Petitioner is detained. Petitioner argues that he is detained pursuant to 8 U.S.C. § 1226(a) because "petitioners who are released on an OREC and subsequently re-detained are subject to Section 1226(a), not Section 1225(b)." Dkt. No. 4 at 4. Respondents argue that Petitioner is detained pursuant to 8 U.S.C. § 1225(b)(2)(A) "[b]ecause Petitioner was apprehended near the border shortly after his unlawful entry into the United States[.]" Dkt. No. 8 at 6. Respondents "acknowledge that this Court has previously found noncitizens released on ORECs to be detained under 8 U.S.C. § 1226(a) rather than Section 1225(b)" (*id.* at 8 (collecting cases where

courts find noncitizens detained pursuant to Section 1226(a) instead of Section 1225(b)), and "[g]iven the factual similarities, Federal Respondents acknowledge that this Court may reach the same conclusion here" (*id.*). Respondents are correct—this Court finds their arguments unconvincing because DHS chose to release Petitioner on an OREC after encountering him near the border shortly after his entrance into the United States, thereby treating him as subject to Section 1226(a). *See, e.g.*, *Ahmad v. Mullin*, No. C26-2194, 2026 WL 2689820, at *2–3 (W.D. Wash. Sept. 14, 2026) ("Where petitioner is 'treated by Respondents as subject to detention under § 1226, rather than mandatory detention under § 1225,' the former is more likely to apply." (citation modified) (quoting *Del Valle Castillo v. Wamsley*, No. C25-2054, 2025 WL 3524932, at *5 (W.D. Wash. Nov. 26, 2025))); *Quintanilla v. Hernandez*, No. C26-1629, 2026 WL 1827541, at *3 (W.D. Wash. June 25, 2026) (concluding that noncitizen was detained under 8 U.S.C. § 1225(a) due to ICE's past classification of him).

**B. Habeas Relief**

Petitioner seeks two forms of relief: (1) a writ of habeas corpus ordering his immediate release from custody (Dkt. No. 4 at 10); and (2) an injunction preventing Respondents from re-detaining Petitioner

> unless the Government first complies with pre-deprivation procedures set forth in 8 U.S.C. § 1182(d)(5)(A) and 8 C.F.R. § 212.5(e), and provides written notice of the basis for the proposed re-detention and a hearing before a neutral decisionmaker at which the Government bears the burden of proving by clear and convincing evidence that Petitioner is a danger to the community or a flight risk and that no conditions of release would mitigate those risks.

*Id*. The Court will address each in turn.

**1. Due Process**

One of the bases for Petitioner's habeas claim is that Respondents violated his due process rights by re-detaining him without notice or a pre-deprivation hearing. *Id*. at 3. The Court addresses Petitioner's claim as follows.

The Due Process Clause prohibits the federal government from depriving any person of "life, liberty, or property, without due process of law[.]" U.S. Const. amend. V. The right to due process extends to "all 'persons' within the United States, including [noncitizens], whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001).

"Procedural due process imposes constraints on governmental decisions which deprive individuals of 'liberty' or 'property' interests within the meaning of the Due Process Clause of the Fifth or Fourteenth Amendment." *Mathews v. Eldridge*, 424 U.S. 319, 332 (1976). "The fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.'" *Id.* at 333 (quoting *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965)); *see also P.T. v. Hermosillo,* No. C25-2249, 2025 WL 3294988, at *2 n.1 (W.D. Wash. Nov. 26, 2025) ("In determining the lawfulness of Petitioner's detention, the Court will focus not on the Government's claimed authority to detain, but the process by which Petitioner was detained.").

In *Mathews*, the Supreme Court established a three-part balancing test for determining whether an administrative procedure provides due process. This test examines:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

424 U.S. at 335.

In *Rodriguez Diaz v. Garland*, the Ninth Circuit assumed without deciding that the *Mathews* test applies in "the immigration detention context." 53 F.4th 1189, 1206–07 (9th Cir. 2022). District courts in this Circuit have applied the *Mathews* test in similar circumstances since then. *See, e.g.*, *Marquez Rujano v. U.S. Immigr. & Customs Enf't*, No. C26-325, 2026 WL 764150, at *3–4 (W.D. Wash. Mar. 18, 2026); *Torres v. Hermosillo*, No. C25-2687, 2026 WL 145715, at *6–8 (W.D. Wash. Jan. 20, 2026); *Sira-Hurtado v. Hermosillo*, No. C25-2173, 2025 WL 3294986, at *3–4 (W.D. Wash. Nov. 26, 2025); *Pinchi v. Noem*, 792 F. Supp. 3d 1025, 1033–36 (N.D. Cal. 2025).

Both Petitioner and Respondents acknowledge the relevance of the *Mathews* analysis here. *See* Dkt. No. 4 at 7–9; Dkt. No. 8 at 12–16. Consistent with persuasive authority, the Court will evaluate Petitioners' claims under *Mathews*, considering each factor in turn to determine whether Petitioners' re-detention comports with constitutional due process requirements.

**a. The Private Interest Affected by the Official Action**

As to the first *Mathews* factor, Petitioner has a considerable private interest in his liberty. "Freedom from bodily restraint has always been at the core of the liberty protected by the Due Process Clause from arbitrary governmental action." *Foucha v. Louisiana*, 504 U.S. 71, 80 (1992). Respondents concede that "Petitioner's interest in remaining free pending his September 15, 2026, merits hearing is . . . significant" noting that "Courts in this District have consistently recognized that a noncitizen who has been released into the community on an OREC acquires a protected liberty interest in remaining at liberty." Dkt. No. 8 at 12–13. Respondents even go as far as conceding that this *Mathews* factor "weighs in Petitioner's favor." *Id*. at 13. In the instant case, even assuming Petitioner's liberty interest is diminished due to his criminal convictions in violation of his OREC, *see K.G.M.Q. v. Bondi*, No. C26-506, 2026 WL 962609, at *7 (W.D. Wash. Apr. 9, 2026), his re-detention must still comport with due process, *see Trump v. J.G.G.*,

604 U.S. 670, 673 (2025) ("It is well established that the Fifth Amendment entitles [noncitizens] to due process of law." (quoting *Reno v. Flores*, 507 U.S. 292, 306 (1993))); *Ramirez Tesara v. Wamsley*, 800 F. Supp. 3d 1130, 1137 (W.D. Wash. 2025) ("[T]he fact that the Government may believe it has a valid reason to detain Petitioner does not eliminate its obligation to effectuate the detention in a manner that comports with due process." (citation modified)). Therefore, the first *Mathews* factor weighs in Petitioner's favor.

**b. The Risk of Erroneous Deprivation of Liberty**

Respondents assert that this *Mathews* factor weighs in their favor because they "conducted an individualized assessment that considered Petitioner's unlawful entry, his convictions for Theft in the Second Degree and Kidnapping in the Second Degree, and his arrest on May 4, 2026, for Attempted Kidnapping and probation violations." Dkt. No. 8 at 13–14. But even if Respondents conducted an "individualized assessment," this assessment did not take the additional crucial step of providing Petitioner notice and an opportunity to be heard regarding the OREC violations. Instead, Respondents detained Petitioner as he walked out of jail and transported him to the NWIPC, where he has been held for over four months without a bond hearing. *See* Dkt. No. 9 ¶ 12. Courts in this District have held that there is a high risk of erroneous deprivation where a noncitizen is detained without notice and either a pre-deprivation hearing or a prompt post-deprivation hearing. *See, e.g.*, *Ortiz-Canales v. Blanche*, No. C27-48, 2026 WL 2561542, at *1 (W.D. Wash. Aug. 31, 2026) (finding re-detention without notice and opportunity to be heard posed risk of erroneous deprivation); *Tello Vazquez v. Mullin*, No. C26-2039, 2026 WL 1911507, at *2 (W.D. Wash. July 2, 2026) ("The absence of pre-deprivation procedural safeguards leads to a high risk of an erroneous deprivation of Petitioner's liberty."); *Geler v. Blanche*, No. C26-481, 2026 WL 1251660, at *6 (W.D. Wash. May 7, 2026) (finding high risk of erroneous deprivation where ICE revoked OREC with no process for

petitioner to challenge revocation). Therefore, the second *Mathews* factor weighs in Petitioner's favor.

**c. Respondents' Interest in Re-Detention Without Notice and a Hearing**

In the third *Mathews* factors, the Court considers Respondents' interest in re-detaining Petitioner without pre-detention notice and a pre-detention or prompt post-detention hearing. The Court acknowledges that Respondents have an interest in enforcing immigration laws, including "securing [a noncitizen's] ultimate removal," as well as an interest in protecting the public from individuals with criminal convictions who are deemed dangerous, both of which are "interests of the highest order." *Rodriguez Diaz*, 53 F.4th at 1208. But "[t]hese interests are in fact served by the individualized determination by an immigration judge, based on a review of evidence presented by the government and the noncitizen, as to whether an individual is dangerous or at risk of fleeing removal proceedings, under existing, well-established procedures." *Geler*, 2026 WL 1251660, at *7 (quoting *Escobar Salgado v. Mattos*, 809 F. Supp. 3d 1123, 1161 (D. Nev. 2025)). Accordingly, an individualized hearing would not interfere with Respondents' interest. Therefore, the third *Mathews* factor weighs in Petitioner's favor.

* * *

In sum, this Court finds that all three *Mathews* factors weigh in Petitioner's favor. Therefore, his re-detention without notice and an opportunity to be heard violated his rights under the Fifth Amendment to the United States Constitution.

**2. Administrative Procedures Act ("APA"), 5 U.S.C. § 706(2)(A)–(D), and 8 C.F.R. § 1236.1(c)(9)**

Petitioner also asserts that his re-detention violates the APA, 5 U.S.C. § 706(2)(A)–(D), and 8 C.F.R. § 1236.1(c)(9). Dkt. No. 4 at 3. However, Petitioner does not provide any analysis in support of this claim in his petition, and instead focuses on his detention authority (*id*. at 4–6)

and his due process claim via a *Mathews* analysis (*id*. at 6–9). Therefore, Petitioner's APA claim is not sufficiently developed to allow for a complete and thorough review, and the Court does not consider it.

**3. Remedy**

Respondents argue that if the Court finds a due process violation, the appropriate remedy is a post-deprivation hearing. Dkt. No. 8 at 15. Petitioner argues that a post-deprivation bond hearing would not adequately vindicate his rights. Dkt. No. 13 at 11 (citing *Kirykovich v. Hernandez*, No. C26-695, 2026 WL 890459, at *4 (W.D. Wash. Apr. 1, 2026)). The Court recognizes that there may be situations that urgently require arrest, in which a prompt post-deprivation hearing would be appropriate. *See, e.g.*, *Quinonez Torres v. Hermosillo*, No. C26-76, 2026 WL 547591, at *9–10 (W.D. Wash. Feb. 23, 2026) (finding due process violation in re-detention of noncitizen and ordering prompt post-deprivation bond hearing where noncitizen's post-OREC circumstances had materially changed due to pending assault and battery charges). In the present matter, Petitioner was arrested less than a year after being released on an OREC for Theft 2nd Degree, a charge of which he was later convicted. Dkt. No. 10-1 at 3. That same year, he was arrested for Kidnapping 2nd Degree, a charge of which he was later convicted. *Id*. Since then, Petitioner has been accused of two separate probation violations and was arrested for an allegation of Attempted Kidnapping. *Id*.; Dkt. No. 9 ¶ 8. This criminal conviction history is recent and the arrests for these convictions came within two years of Petitioner's arrival to the United States. All of the above-mentioned conduct is a violation of Petitioner's OREC, meaning his circumstances have materially changed since his release on the OREC. Moreover, there is no record before the Court of Petitioner being otherwise compliant with his OREC, such as satisfying check-in requirements. Additionally, there is no record that Respondents knew of Petitioner's convictions and arrests before May 2026 and still chose to keep Petitioner in the

community. In fact, Respondents detained Petitioner just days after it came to their attention that Petitioner was in the Clackamas County Jail, effecting Petitioner's detention immediately upon his release from custody. *Id.* ¶ 11. Circumstances such as these are where a prompt post-deprivation hearing is appropriate. Therefore, the Court finds that the proper remedy is not immediate release, but instead a post-deprivation bond hearing. *See Geler*, 2026 WL 1251660, at *1, 7 (ordering post-deprivation bond hearing where noncitizen's criminal convictions for "assault, domestic violence, and exposing a minor to domestic violence" constituted materially changed circumstances); *Mata Perez*, No. C26-1087, 2026 WL 1506346, at *2, 8 (W.D. Wash. May 29, 2026) (ordering post-deprivation bond hearing where noncitizen's two convictions for aggravated harassment and additional arrests constituted materially changed circumstances).

The Court adopts the reasoning outlined in *Geler* as to who holds the burden at Petitioner's bond hearing, see 2026 WL 1251660, at *7, and orders that at Petitioner's bond hearing, Respondents will have the burden of proving by clear and convincing evidence that Petitioner is a danger to the community or a flight risk, and that the hearing shall be recorded. *See also Martinez Hernandez v. Mullin*, No. C26-2034, 2026 WL 1998571, at *6 (W.D. Wash. July 10, 2026) (citing *Singh v. Holder*, 638 F.3d 1196 (9th Cir. 2011) (ordering post-deprivation bond hearing where respondents were required to prove by clear and convincing evidence that the noncitizen was a danger to the community or a flight risk); *Quinonez Torres*, WL 547591, at *11 (same).

**C. Injunctive Relief**

In the event that Petitioner is released from custody, Petitioner requests that the Court enjoin Respondents from re-detaining him without "first compl[ying] with the pre-deprivation procedures set forth in 8 U.S.C. § 1182(d)(5)(A) and 8 C.F.R. § 212.5(e), and provid[ing] written notice of the basis for the proposed re-detention and a hearing before a neutral decisionmaker at

which the Government bears the burden of proving by clear and convincing evidence that Petitioner is a danger to the community or a flight risk and that no conditions of release would mitigate those risks." Dkt. No. 4 at 12. Petitioner addresses and satisfies each factor. *See id*. at 11–12.

With respect to the first factor, "It is well established that the deprivation of constitutional rights 'unquestionably constitutes irreparable injury.'" *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012) (quoting *Elrod v. Burns*, 427 U.S. 347, 373 (1976)). "[C]ourts in this district have repeatedly found that the Government's conduct in revoking release and re-detaining non-citizens without pre-deprivation process is unconstitutional[,]" yet "[t]he Government has chosen to 'respectfully disagree' with those orders and to continue its current practices." *Espinoza Palacios v. Hermosillo*, No. C26-491, 2026 WL 686138, at *10 (W.D. Wash. Mar. 11, 2026) (collecting cases). Even where the noncitizen has criminal convictions in violation of his OREC, the government must still provide a prompt post-deprivation bond hearing. *See Martinez Hernandez*, 2026 WL 1998571, at *5–6; *Geler*, 2026 WL 1251660, at *7; *Quinonez Torres*, WL 547591, at *10. Because no hearing was provided here, Petitioner's constitutional rights were violated, and Respondents' pattern of "current practices" suggest this violation is likely to recur. As to the second factor, any monetary damages would be inadequate to compensate for being detained for months without a bond hearing in violation of due process. With respect to the third and fourth *eBay* factors, "it is 'always in the public interest to prevent the violation of a party's constitutional rights.'" *Baird v. Bonta*, 81 F.4th 1036, 1040 (9th Cir. 2023) (quoting *Riley's Am. Heritage Farms v. Elsasser*, 32 F.4th 707, 731 (9th Cir. 2022)). What is more, in the immigration context, the Ninth Circuit has recognized that "[t]he costs to the public of immigration detention are 'staggering[.]'" *Hernandez v. Sessions*, 872 F.3d 976, 996 (9th Cir. 2017). Accordingly, the balance of hardships and public interest weigh in Petitioner's favor.

Therefore, the Court orders that Respondents are enjoined from re-detaining Petitioner without complying with due process and all applicable statutes and regulations. Although Petitioner requests that he be given a pre-deprivation hearing before any re-detention, what is required under due process can vary based on the circumstances, as seen in the instant petition where the Court finds that a prompt post-deprivation hearing based on the specific facts at hand, comports with due process.

## IV. CONCLUSION

Accordingly, Petitioner's petition for writ of habeas corpus (Dkt. No. 4) is GRANTED in part and DENIED IN PART. It is hereby ORDERED:

(1) Respondents MUST either release Petitioner on the terms of his most recent OREC or other terms consistent with Section 1226(a), or provide Petitioner with a bond hearing under Section 1226(a) before an immigration judge within **seven (7) days** of the date of this Order. At the hearing, the government SHALL bear the burden of proving by clear and convincing evidence that Petitioner is a danger to the community or a flight risk. Respondents SHALL ensure that the hearing is recorded.

(2) If a bond hearing is not provided within **seven (7) days** of the date of this Order, Petitioner SHALL be released from the NWIPC within **twenty-four (24) hours** of the final day by which a bond hearing was ordered to occur on the terms of his most recent OREC or other terms consistent with Section 1226(a).

(3) Respondents SHALL file a Status Report with the Court either confirming that Petitioner received a bond hearing—and informing the Court of the results of that hearing—or otherwise confirming his release by October 5, 2026.

(4) Respondents and all their officers, agents, employees, attorneys, and persons acting on their behalf or in concert with them SHALL NOT re-detain Petitioner, without complying with due process and all applicable statutes and regulations.

(5) Petitioner's Motion to Appoint Counsel (Dkt. No. 11) is DENIED AS MOOT.

Dated this 24th day of September, 2026.

Tana Lin
United States District Judge